UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMMANUEL ABGARA**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 19-cv-1823 (TSC) |
| **AT&T MOBILITY, LLC** *et al.*, | )<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

## Memorandum Opinion

Defendant AT&T Mobility LLC ("AT&T") moves to dismiss this action and compel *pro se* Plaintiff Emmanuel Agbara to participate in arbitration. (ECF No. 5 ("Mot. to Compel").) Plaintiff moves to amend his Complaint to add claims under 47 U.S.C. § 551, the Cable Communications Policy Act (CCPA), and to obtain declaratory relief on his CCPA claim. (ECF Nos. 10, 14.)[1] For the reasons stated below, the Court will GRANT AT&T's motion to compel this matter to arbitration, GRANT Agbara's motion to amend his Complaint as to AT&T, and DENY Agbara's motion for declaratory relief as to AT&T.

I. **BACKGROUND**

Agbara alleges that his then-wife, Evelyn O. Okoji, used AT&T to improperly gain access to his cell phone account in order to obtain confidential information and change the password. (ECF No. 1 ("Compl.") at 11.) Agbara's original complaint stated negligence claims

---

[1] Agbara also filed a "Motion to Correct a False Claim in Defendant's Motion for Appointment of Counsel." (ECF No. 18.) This "motion" is a response to a motion an individual defendant filed, unrelated to the dispute between Agbara and AT&T. Accordingly, the court need not address Agbara's "motion" here.

1

against AT&T.  (*See* Compl.)  In the amended Complaint, (*see* ECF No. 10-1 ("Am. Compl.")), Agbara seeks to add a claim against AT&T under the CCPA, which protects subscriber privacy and allows aggrieved subscribers to seek relief from cable operators in federal court.  *See* 47 U.S.C. §§ 551(c)(1), 551(f).  Agbara seeks $10 million for the resultant emotional pain and suffering.  (Compl. at 6.)  Agbara bought the phone in question in 2014, at which time he signed a Wireless Customer Agreement which stated, *inter alia*, that "AT&T and [Agbara] agree to arbitrate all disputes and claims between [them]."  (Mot. to Compel, Ex. B ("Wireless Customer Agreement" at 6.)

## II.     ANALYSIS

When determining whether to compel arbitration, courts must ask first whether the parties "entered into a valid and enforceable arbitration agreement," and second, whether the arbitration agreement "encompasses the claims raised in the complaint."  *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.,* 448 F. Supp. 2d 64, 68 (D.D.C. 2006); *see also Pan Am. World Airways, Inc. v. C.A.B.*, 683 F.2d 554 (D.C. Cir. 1982).  Agbara does not appear to dispute that the parties entered into a valid arbitration agreement.  (ECF No. 11 ("Opposition") at 17–19.)  The Federal Arbitration Act provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Finding no grounds for the revocation of the contract, and recognizing that the text of the contract unambiguously states that "AT&T and [Agbara] agree to arbitrate all disputes and claims between [them]," (Wireless Customer Agreement at 6), the court finds that the parties entered into a valid arbitration agreement.

Agbara contests the second factor—whether the arbitration agreement encompasses his claims. (Opposition at 17–19.) He argues that "the cause of action in this case lies outside of the contract," because he "did not contract to hack [his] cellphone account" and because "the criminal acts[2] happened . . . outside the cellphone contract." (*Id.* at 6, 17, 24). In response, AT&T notes that, by its own terms, the arbitration clause applies to "all disputes and claims between us" and is "intended to be broadly interpreted." (ECF No. 12 (Reply) at 2–3).

"[A]rbitration is required of any controverted claim that can reasonably be said to fall within the scope of the arbitration clause." *Pan Am. World Airways, Inc. C.A.B.,* 683 F.2d 554, 559 (D.C. Cir. 1982). Agbara's negligence claim can reasonably be said to fall within the scope of the arbitration clause for several reasons. First, it is a civil claim and the arbitration agreement expressly includes "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory . . ." (Wireless Customer Agreement at 6.) Additionally, the nature of Agbara's claim is that AT&T failed to protect his privacy (*see* Compl. at 5)—a topic that is encompassed by the contract's incorporation of the AT&T Privacy Policy. (Wireless Customer Agreement at 1). Finally, even if this were a close issue, the D.C. Circuit has held that "doubts about the intended scope of an agreement to arbitrate [are to] be resolved in favor of the arbitral process." *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 829 (D.C. Cir. 1987).

All of these arguments apply with equal force to Agbara's CCPA claim. The "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, (1987). As this Circuit has made clear, "statutory claims are fully subject to binding arbitration."

---

[2] Any criminal proceedings are not within this court's jurisdiction in this civil litigation.

3

*Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1478 (D.C. Cir. 1997). There is, however, one exception: a statutory claim is not subject to arbitration if the statute itself evinces an intent to preclude arbitration. *See Shearson*, 482 U.S. at 226. The burden to establish such intent "lies with the party opposing arbitration, and such intent must be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id*. at 227 (internal quotations omitted) (alteration in original).

Agbara argues that the "intent of Congress for plaintiff to bring a civil action in a United States district court . . . is explicit." (Opposition at 23.) He further cites to the language of the statute providing that "any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court." (*Id.*) (citing 47 U.S.C. § 551(f)(1)). But permitting an individual to bring a case in federal court is not the same thing as evincing an intent to preclude arbitration. In *Shearson*, for example, the Supreme Court considered whether the RICO statute evinced an intent to preclude arbitration. *Shearson*, 482 U.S. at 228. The RICO statute contains similar language to the CCPA allowing any person to bring a claim in "United States district court," yet the Supreme Court determined that "there is nothing in the text of the RICO statute that even arguably evinces congressional intent" to preclude arbitration. *Id* at 238. The same is true for the CCPA. Moreover, the legislative history of the CCPA does not indicate an intent to preclude arbitration, and there is no inherent conflict between arbitration and the CCPA's purpose. Indeed, consistent with these findings, courts in numerous circuits have compelled arbitration of CCPA claims, despite the statute's explicit language allowing subscribers to bring their claims in federal court. *See, e.g.*, *Wainblat v. Comcast Cable Commc'ns,* 2019 WL 5698446, *7 (D. Mass. Nov. 4, 2019); *Cassity v. GCI, et al.,* 2017 WL 3197729 (D. Alaska July 27, 2017); *Cova v. Charter Commc'ns, Inc.*, 2017 WL

666097 (E.D. Mo. Feb. 17, 2017); *Montoya v. Comcast Corp.*, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016); *Bayer v. Comcast Cable Commc'ns*, 2013 WL 1849519 (N.D. Ill. May 1, 2013). This is because permitting a subscriber to agree to arbitrate his claims does not require him to "forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Shearson,* 482 U.S. at 229–30. In this case, Agbara did agree to arbitrate all claims, and the court thus finds that the arbitration agreement encompasses all of Agbara's claims, including those under the CCPA.

The D.C. Circuit has not specifically addressed the issue of whether it is most appropriate to stay or to dismiss a case, such as this, where the claims are referred to arbitration. *See Mercadante v. XE Servs., LLC,* 78 F. Supp. 3d 131, 146–47 (D.D.C. 2015) (comparing *White v. Four Seasons Hotels & Resorts,* 999 F. Supp. 2d 250, 261–62 (D.D.C.2013) (staying case) with *Ryan v. BuckleySandler, LLP,* 69 F. Supp. 3d 140, 149 (D.D.C. Sept. 25, 2014) (dismissing case)). This issue has also split the Circuits. *See Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, n.9 (D.D.C. 2018) (noting Circuit split).

However, of the cases reviewed by this court, a majority of Circuits to address this issue have found dismissal appropriate where all claims are subject to arbitration.[3] The rationale is that when all claims against a particular Defendant are submitted to arbitration, retaining jurisdiction by staying the action serves no purpose because, "[a]ny post-arbitration remedies

---

[3] At least five Circuits have found dismissal appropriate. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014); *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 372 (1st Cir. 2011); *Ozormoor v. T–Mobile USA, Inc.*, 354 Fed. Appx. 972, 975 (6th Cir. 2009); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Three Circuits have found dismissal inappropriate. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 732 n.7 (7th Cir. 2005); *Lloyd v. HOVENSA, LLC,* 369 F.3d 263, 269 (3d Cir. 2004); *Adair Bus Sales, Inc. v. Blue Bird Corp.,* 25 F.3d 953, 955 (10th Cir. 1994).

sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Alford v. Dean Witter Reynolds*, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992).  This court finds this reasoning persuasive and applicable to this case.  Accordingly, this court will dismiss without prejudice Agbara's claims against AT&T.

### III. CONCLUSION

For the foregoing reasons, AT&T's motion to compel arbitration will be GRANTED as to AT&T.  Further, the court will GRANT Agbara's motion to amend his Complaint as to AT&T (ECF No. 10) and DENY Agbara's motion for declaratory relief (ECF No. 14) as to AT&T.  All claims against AT&T will be DISMISSED without prejudice.  A corresponding order will issue contemporaneously.  The Clerk of the Court shall mail a copy of this Memorandum Opinion to:

> **EMMANUEL ABGARA**
> 4017 5th Street NW
> Washington, DC 20011
>
> **EVELYN ONYENYI OKOJI**
> 6323 Georgia Ave., N.W. #55131
> Washington, D.C. 20011

Date:  February 11, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge